## Same Case—Application for a Re-hearing.

Where a mortgage contains the pact, *de non alienando*, one, who subsequently purchases the property from the mortgagor, cannot claim to be in any better condition than his vendor, nor can he plead any exception which the latter could not. Any alienation in violation of the pact *de non alienando* is null, as to the creditor.

Where a creditor, whose claim is secured by mortgage, may proceed against the same person by a personal action or by executory proceedings, the institution of proceedings *viâ executiva* will interrupt the prescription running against the personal action ; and this interruption is continuous, preserving the personal action while the executory proceedings are

being prosecuted; and *vice versa*. And where the mortgage contains the pact *de non alien-ando*, a purchaser from the mortgagor, subsequent to the mortgage, will be considered as standing in the place of the mortgagor, and as subject to the same liabilities.

ON an application for a rehearing, made in this case by *Steele*, for the oppo-nent, the judgment of the court *(King, J. absent,)* was pronounced by

SLIDELL, J.   An application for a rehearing has been made in this case, in which, among other points presented in his first brief, the appellee particularly insists upon the considerations, that he stands as the vendee of *Compton*, who had no participation in the injunction, and was at no time a party to the proceedings; and that the attempted exercise of the hypothecary right had no effect upon the right of personal action for the debt.   The doctrine is invoked that when mortgaged property has passed into the hands of a third person, the interruption of the personal action against the debtor does not interrupt the prescription with regard to the third possessor; and, reciprocally, that the interruption of the hypoth-ecary action does not interrupt the prescription of the principal.

The correctness of the doctrine, in ordinary cases, may be conceded.   But the circumstances of the present case, are peculiar.   In addition to the professional and personal connection of *Stockton* with this case, during the protracted delay which is now invoked for the purposes of prescription, there is a feature in the case which is decisive against his right to avail himself of his newly acquired character as the vendee of *Compton*, and to treat the personal and hypothecary rights as distinct and independent.

We have already shown that *Stockton* was fully-acquainted with the antecedent conveyances and mortgages.   They were not only recited in the deed from *Compton*, but in the pleadings in the case; and, indeed, the appellee conceeds his entire acquaintance with the titles, and disclaims any benefit which ignorance could confer.  Now the mortgage from *M' Call* contains, as stated in our previous opinion, the covenant *de non alienando*.   The language is, "hereby confessing judg-ment in favor of said *J. Stanbrough*, curator as aforesaid, for the said sum of money, to be paid with interest as aforesaid, and covenanting not to dispose of said lands to the prejudice of this mortgage."

The effect of this covenant has been frequently considered, although never, as we believe, with reference to the particular point now under consideration.

In *Nathan* v. *Lee*, 2 Mart. N. S. 33, it was said that a mortgage creditor, who acts on a mortgage which contains in his favor an agreement of the debtor not to alienate, is not bound to pursue a third possessor by the action of mortgage, but may have the hypothecary property seized, *viâ executivâ*, as if no change had taken place in its possessors; because any alienation or transfer made in violation of the pact *de non alienando* is, *ipso jure*, void, as it relates to the creditor.   To consider such a pact as entirely nugatory and unavailing, would be contrary to a funda-mental rule in the construction of contracts and statutes—that full effect should be given to all their provisions, whenever it can be done without falling into absurdity. Judge Martin also said in that case that, the effect of the pact *de non alienando* was not impaired by the provisions of the Civ. Code of 1808.  The strong language which he uses as to the effect of the pact, is supported by the spanish authority to which he refers.   Febrero observes: " En virtud de este pacto es nula la enagenacion, y se contempla la cosa hipotecada en poder del deudor para el fin expuesto, segun queda sentado en el num. 68." And in the section-referred to, he says; "Y se previene que contra este no pasa el derecho de executar, aunque proceda de sentencia declarada en coza juzgada, y la obligacion sea personal ò real; excepto

que intervenga el pacto referido, que entonces como no se transfiere su dominio al tercero poseedor, ya sea por titulo oneroso ó lucrativo, antes bien es nula la enagenacion, se contemplan los bienes enagenados de esta forma como existentes en poder del deudor principal y verdadero, *porque esta por ningun acto, ni contracto puede debilitar, ni deteriorar la condicion de su acreedor.*" Febrero, Adicionado, Libreria de Escribanos, part 1. ch. 7, §4, nos. 89, 68.

In *Donaldson* v. *Maurin*, 2 La. 39, the effect of the pact was again considered; the case of *Nathan* v. *Lee*, was affirmed; and it was also held that its effect was not impaired by the repealing act of 1828.  It was considered as springing, not from legislation, but from the agreement of the parties.  "It is an universal principle," said the court, "that effect must be given to all the parts of a written contract or agreement, and meaning to all its stipulations and phrases, unless such a construction leads to absurdity."  "It is also a general rule that, owners of property must be presumed to know the titles and the encumbrances under which they hold."

In *Murphy* v. *Jandot*, 2 Rob. 378, the court said :  The mortgage to *Jandot* contains the clause *de non alienando*, and consequently no transfer of the property would effect his right to proceed summarily against it, as if still belonging to the mortgagor.  So in The *Gas Bank* v. *Allen*, 4 Rob. 389 ; *Dodd* v. *Crain*, 6 Rob. 60. *Ducros* v. *Fortin*, 8 Rob. 167.

Hence, then, it results that, *Stockton*, holding under *M'Call* and well acquainted with his title, is estopped by the pact *de non alienando* from claiming a better condition than his author, and pleading an exception which *M'Call* could not have pleaded.  Let us see then whether, under the circumstances, *M'Call* could assume the grounds which *Stockton* attempts to occupy, and assert that the debt and mortgage were extinguished by prescription.

By the pact *de non alienando*, *M'Call* was forbidden to alienate to the prejudice of the mortgage; the plaintiff was entitled to proceed by seizure and sale, as though he had not sold; and did so proceed, and gave him notice. Can a mortgagor in possession (and, by virtue of the pact, *M'Call* is deemed still in possession,) pretend that prescription runs against the debt itself, while the creditor is exercising the accessary right of mortgage.  This question may be answered in the language of D'Argentrée. "Sed de his actionibus quæ se habent sese, ut accessoriæ et principalis, ut personalis et hypothecaria, justa dubitatio esse posset, nisi expressè de eo esset constitutum, l. fin. C. de Annal. Except., quâ traditur una contestatione aut citatione in alterâ, fieri in utraque interruptionem. Sed etsi in isto est aliquid, tamen in eo non sunt omnia.  Nam cum hoc sic statuitur, præsupponitur personalem et hypothecariam adversus eandem personam competere, et ideò alteram alteri disjunctam accessoria ex causâ debiti eadem, et si diversæ qualitatis obligationes sunt.  Secus accidit, cùm personalis in personâ obligati aut hæredum rescdit, et hypotheca in extraneum est translata, quo casu dubium non est, utramque per principalem esse ; unde evenit, ut proescriptionis tempora non sint eadem.  Ideoque apparet mutatione personæ mutari prescriptionum conditiones et extraneum de facto suo non teneri, sed in rem persecutionem esse, et quæ adversùs eum actio intordatur, non esse amplius accessoriam ad personalem.  Quare hoc casu censeo quod interruptum fuerit adversùs principalem, extraneo non obesse, cujus aliud jus et causa est et posse ex capite suo proescriptionem perficere."  Art. 266, p. 1160, no. 9; cited in Troplong, Prescrip. note to no. 659.

Applying these principles to the case before us, the prescription of the personal

action was interrupted by the hypothecary proceeding, the creditor being competent to exercise both of these against the same person, by virtue of the pact *de non alienando*.

. This reasonable rule is sanctioned by the Code, from which, as we have seen, D'Argentrée derived it. "Qui obnoxium suum in judicium clamaverit, et libellum conventiomis ei transmiserit, licet generaliter nullius causæ mentionem habentem, vel unius quidem specialiter, tantummodo autem personales actiones, vel hypothecarias continentem, nihilominus videri jus suum omne eum in judicium deduxisse, et esse interrupta temporum curicula: cum contra desides homines et sui juris contemptores odiosæ exceptiones oppositæ sunt." ˙Code, lib. 7. tit. 40.

The rule harmonizes with the theory of prescription, which has its basis in the presumption of renunciation on the part of him who neglects his rights, and which presumption cannot be entertained against a party who is struggling to collect a debt, and is not *sui juris contemptor*.

The interruption then created by the institution of one species of action must also be considered as continuous, and as preserving the personal action while the hypothecary action is in course of prosecution. To this effect is the language of *Dunod*, who, while he sanctions the general rule invoked by the appellee, recognizes the exception in a case like the present. L' action personelle intentée contre le débiteur, n'empeche pas le tiers possesseur de l'hypothèque de la prescrire; et vicissim, quoique l'exercise de l'une *conserve* l'autre lorsqu'elles concourent dans un meme sujet; parcequ'en ce dernier cas elles sont jointes et acceesoires l'une à l'autre, au lien qu'au précédent elles sont principales et indépendantes. *Rehearing refused.*