## No. 8492.

### WIDOW B. AVEGNO ET AL. VS. SCHMIDT & ZIEGLER.

In a sale of property confiscated under the Act of Congress of July 17, 1862, all that could be sold was a right to the property seized, terminating with the life of the person for whose offense it had been seized.

Such proceedings and sale do not affect the rights of mortgage in favor of third persons on the property which goes to the government or to the purchaser *cum onere*.

A mortgagee under an act containing the pact "*de non alienando*" can proceed against the mortgagor, as though the latter had never been divested of his title.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

---

*Albert Voorhies* for the Plaintiffs and Appellees:

1. The effect of decree of confiscation is to divest all interest of the confiscatee; and from that moment the life estate is vested in the government and the ownership in the presumptive heirs of confiscatee. 92 U. S. 202; 95 U. S. 711, 713; 102 U. S. 132; see Pasteur's case (unreported) U. S. S. C. In which case, held: that the fee simple vests in the presumptive heir of confiscatee from the date of judgment of condemnation.

2. The pact *de non alienando* is a mere private contractual stipulation, binding on the obligor, but not paramount to laws of public order or policy, which regulate the forced expropriation of property, nor to those which regulate the administration of justice, including the forced sales of property.

3. The rights of mortgage creditor are not affected or impaired by decree of condemnation; but he cannot disregard or ignore the divestiture of his debtor's rights by decree of condemnation, and the vested right of the government and of the presumptive heirs.

74

Avegno et al. vs. Schmidt & Ziegler.

4. The judgment of the Federal District Court, rejecting intervenor's claim on its merits, is *res judicata* against him in any other proceeding: having voluntarily subjected himself to the jurisdiction, he cannot complain. And, besides, this Court has the necessary jurisdiction to distribute the proceeds of sale of property which it condemns and causes to be sold. Act of Congress of 1862, Secs. 7, 8, 14; see Waples vs. Hays, U. S. S. C., Nov. 6, 1882; 5 Morrison's Trans. 81.

5. One cannot charge the absolute nullity of a proceeding, and, in the same breath, assert its validity and legal efficiency.

6. The amnesty proclamation had no retroactive effect. See Proclamation of Amnesty, 1868.

### *Miller & Finney* for Defendants and Appellants:

The jurisdiction to condemn under the Act of Congress of 17th July, 1862, to suppress insurrection, punish treason, confiscate property of rebels, etc., depends on actual and continuous seizure and possession by the marshal of the property sought to be condemned; the failure to seize originally defeats the jurisdiction, and failure to maintain the seizure is equally fatal. Hence, if there was no such actual and continuous seizure and possession, the decree is void and can be invoked for no purpose. See 5th and 7th Sections, Art. 17, July, 1862, 12th Statute, p. 589; Conkling's Treatise, p. 233; The Joseph Segunda, 10th Wheaton, p. 312; Hudson vs. Guestier, 4th Cranch, p. 294.

The absence of any jurisdiction to condemn under the act, owing to the fact that no seizure is made, may be shown collaterally whenever such a decree, void for want of jurisdiction, is set up. Rose vs. Himely, 4th Cr. 241; Thompson vs. Whitman, 18 Wall. 466, and authorities there cited.

Even if the property has been seized and condemned under the Act of 1862, and the owner is afterwards pardoned, so that the condemnation proceeding is stopped and never consummated by a sale, the proceeding thus frustrated must be deemed to have been wholly ineffective to change the relation of the owner of the property.

But condemnation, with or without sale, under said Act of 1862, affects only the life estate of the owner of the property; it follows that no such decree, whether followed by a sale or not, can cut off the rights of creditors holding mortgages on the property; their right to seize and sell for satisfaction of the mortgage debt will be unimpaired, and subsist in full force the same as if no such condemnation had ever taken place. Sec. 12, U. S. Statutes at Large, p. 589; Joint Resolution, Ib. p. 627; Bigelow vs. Forrest, 9 Wall. 347; Day vs. Micou, 17 An. 718; same case, 18 Wall. 156.

Nor will a judgment dismissing the intervention of a mortgage creditor in a proceeding under the Act of 1862 at all prejudice his right to seize and sell the property under his mortgage; the legal effect of such judgment is simply, that Court has no jurisdiction to deal with the mortgage, but leaves it precisely as it stood before the proceeding. Hence, such judgment of dismissal constitutes not the slightest impediment to the suit of the mortgage creditor to seize and sell the mortgaged property for satisfaction of his debt. See authorities cited above. Claims of Marcuard et als., 20 Wall. 114; Ex parte Lange, 18 Wall. 177.

It results, too, that the suit to seize and sell the property for the satisfaction of the mortgage is lawfully conducted against the mortgaged debtor as it would have been if the confiscation proceedings had never been begun, especially as the pardon of the debtor prevented the consummation of the proceedings. See Code of Practice, Art. 736.

### *Leovy & Kruttschnitt* for Morgan Estate, Warrantor:

1. Under the Confiscation Act of Congress of July, 1862, the property sought to be confiscated must be seized prior to proceedings to condemn before a libel can be filed. It is absolutely necessary to confer jurisdiction on the court. Pelham vs. Rose, 9 Wall. 106; Miller vs. U. S., 11 Wall. 294; 11 Wall. 344; Pike vs. Nossel, 94 U. S. 712.

2. There must also be a seizure and keeping of possession after the filing of the libel. To constitute a valid seizure, the marshal must have "the actual, visible possession and con-

trol of the thing seized, and must exclude the possession and dominion of the owner." The Segunda, 10 Wheaton, 312; Conkling's U. S. Courts, (4th Ed.) p. 457. And where the jurisdiction of the court depends upon the seizure, the possession must be continuously maintained during the pendency of this proceeding. Ibid; and Adler vs. Roth, 11 Rep. 524.

3. The court had no jurisdiction further than to seize and sell the confiscatee's interest in the property. And the judgment is to have only this effect, though the language go further. Bigelow vs. Forrest, 9 Wall. 350; Day vs. Micou, 18 Wall. 160; Ex parte Lange, 18 Wall. 177; Marcuard Claims, 20 Wall. 115; Act of Congress, 17th July, 12 Statutes at Large, p. 591.

4. Appeal was suspended. Yeaton vs. U. S., 5 Cranch, 281. 1st Blatchf. C. C. R. p. 1.

5. All rights were restored by the President's proclamation. The pardon arrested and disposed of the confiscation proceedings. In this case the property had not been sold when the pardon was proclaimed, which was on the 25th December, 1868. The case was then pending in the U. S. Circuit Court on a suspensive appeal. Even had there been no appeal, and the property had been sold, and the proceeds in the custody of the court, Avegno would have been entitled to the proceeds as an effect of the pardon. Carlisle vs. The U. S., 16 Wall. 147; Osborn vs. The U. S., 91 U. S. S. C. 474; Knote vs. The U. S., 95 U. S. S. C. 152.

6. The debtor is the proper and only party against whom proceedings can be instituted. This was the course pursued in the Micou case, 26 An., 720; 18 Wall. 160. In this case, when suit was instituted, Avegno was the actual debtor, he was in possession, and an appeal had suspended judgment against him. But had there been judgment against him, execution and sale, Morgan could have proceeded as if no sale had taken place. 18 Wall. 160.

An act of mortgage containing the pact *de non alienando* authorizes the mortgagee to foreclose, by proceeding contradictorily with the mortgagor alone, whether the alienation has been voluntary or by process of law. It is an agreement binding on the heirs, and they cannot contest it. 13 An. 241; 11 An. 383; 8 An. 58; 4 An. 324; 3 An. 268; 2 An. 453; 10 R. 54; 9 R. 283; 6 R. 58; 4 R. 389; 2 R. 378; 19 L. 491; 15 L. 267; Id. 571; 14 L. 133; 13 L. 315; 1 L. 39; 2 N. S. 32.

No question of public policy intervened, as alleged by plaintiff, because confiscation proceedings are directed against the owners of the property, and not against the mortgage creditors. Their rights are expressly reserved.

---

The opinion of the Court was delivered by

POCHÉ, J. A statement of the salient facts which have given rise to this controversy is necessary to a proper understanding of the issues involved therein.

On the 20th of January, 1865, proceedings were instituted under the Act of Congress of July 17th, 1862, known as the "Confiscation Act," for the condemnation of seven lots of ground in this City, as the property of Bernard Avegno.

On the 13th of April of the same year, Charles Morgan, a citizen of New York, holding notes of Avegno amounting together to $36,400, secured by mortgage on four of the lots in question, filed an intervention in the proceedings for confiscation, for the purpose of preventing the condemnation, or in the alternative for the recognition and enforcement of his mortgage rights.

On July 14th judgment was rendered, condemning the seven lots, ordering the sale thereof, decreeing that Morgan's mortgage could " not be acknowledged," and dismissing his intervention.

On August 1st Morgan's motion for a new trial was overruled, whereupon he took a suspensive appeal to the Circuit Court, where it was dismissed in March, 1872; from the latter judgment he took an appeal to the Supreme Court of the United States, when the judgment was affirmed.

In the meantime the three lots not affected by Morgan's mortgage were sold by the marshal, but the record shows no further proceedings against the four lots subject to Morgan's mortgage.

The appeal taken by him was apparently construed by all parties concerned to have had the effect of suspending the judgment of condemnation in so far as it affected the four lots in question.

In June, 1867, Morgan instituted suit on his notes and mortgage against Bernard Avegno, who accepted service of the petition. In execution of the judgment rendered in that suit in the U. S. Circuit Court, the four lots in question, which were found in the possession of Avegno, were seized by the marshal and were adjudicated to Charles Morgan in December, 1868, for $50,000. In March, 1869, Morgan sold the lots to Schmidt & Ziegler.

This suit is brought by the children and heirs of Bernard Avegno, who died in 1872. They claim the property under the reversion in favor of Avegno's heirs, under the effect of the condemnation of his property under the Confiscation Act, and they prosecute this appeal from an adverse judgment.

The defendants and the succession of Morgan, called in warranty, maintain the legality of Morgan's proceedings in execution of his mortgage, even if the confiscation proceedings had been regular and final, and had legally divested Avegno of his titles to the property, and they charge nullity in the confiscation proceedings, finally alleging that all proceedings for confiscation then pending were abrogated by the proclamation of pardon issued by the President of the United States in December, 1868.

The view which we have taken of this case entirely eliminates from discussion the numerous, vexed and complicated questions of the legality of the confiscation proceedings, as well as of the nature and effect of the appeal taken by Morgan from the judgment of condemnation, in which his intervention was dismissed.

A correct interpretation of the Act of Congress of July 17, 1862, entitled "An Act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels and for other

purposes," as explained by a resolution adopted by that body on the same day, explanatory of said Confiscation Act, irresistibly leads to the conclusion that "all that can be sold by virtue of a decree of condemnation and order of sale under the Act was a right to the property seized, terminating with the life of the person for whose offense it had been seized." Bigelow vs. Forrest, 9 Wall. 339.

Hence, it was held in that case that although the claimant, under his father, was himself liable to confiscation under the Act as an officer of the confederate army, such circumstances were no bar to his recovery.

As a corollary from the main proposition, it follows logically that the rights of other parties in the condemned property could not in the least be affected by the confiscation proceedings against the offender, and that a sale made under such proceedings could not impair rights of mortgage in favor of third persons on the condemned property. In the case of Day vs. Micou, 18 Wall. 160, this question was directly involved in the controversy, and the Supreme Court of the United States unequivocally adopted this interpretation, and speaking of mortgage rights "*bona fide*" acquired by third persons on the offender's property previously to his offense, the Court said: "Their interests did not pass to the purchaser at the sale, and they remain unaffected by the decree of condemnation and the sale thereunder."

In the case of Waples vs. Hays, Morrison's Transcript, vol. 5, No. 2, speaking of the rights of the mortgagee, the Court said: "As his lien was not condemned, his rights under it would have been superior to the title acquired by Waples."

After a careful examination and a patient study of the jurisprudence as established by the decisions of the Supreme Court of the United States, we reach the conclusion that a sale of immovable property under confiscation proceedings, in accordance with the Act of Congress, has no more the effect of impairing the rights of mortgage of third persons than an expropriation by private act, or judicial process would under our laws.

Hence, it follows that, admitting the perfect legality and binding force and effect of the confiscation proceedings against Bernard Avegno, and that he had thereby been completely divested of title to the fee, as fully as could have been accomplished by a sheriff's sale under our practice, the mortgage rights of Morgan were not in the least affected by this divestiture of title, and continued to attach to the property either in the hands of the United States or of the purchaser under the proceedings, or in the indefinite ownership of the fee vested, under the Act, in the presumptive heirs of Avegno.

While plaintiffs' counsel strenuously contends that the judgment of the District Court in the confiscation proceedings, disposing of Morgan's intervention, was a judgment on the merits and final, we do not understand him to argue therefrom that in such a case Morgan's mortgage was extinguished or destroyed by that judgment. The argument would be too bold indeed, the proceeding being *in rem*, from the very nature of which Avegno was not a party thereto.

It is patent that, under such a state of pleadings, no judgment could have been rendered so as to be binding on the mortgagor, and hence, for want of proper parties, the mortgagee himself could not have been bound by such a judgment.

Granting that the judgment rendered under the pleadings was intended by the Judge to be on the merits and final, it must be construed as determining nothing more than the issue involved under the pleadings as they were then composed.

The issue presented by Morgan's intervention was twofold: 1st, the right of condemnation; 2d, his mortgage rights under the proposed sale. On the first issue the decree was that the property should be condemned and subsequently sold. On the second issue the decree was that Morgan's mortgage could not be acknowledged, meaning, evidently, not acknowledged as prayed for under the pleadings, but nothing more.

We cannot do the injury to the Judge of that court to suppose that he intended by his judgment to pass upon and dispose of issues which were not submitted to him, and which were manifestly beyond his jurisdiction.

Should, however, the necessities of this case require it, we would have no hesitation in declaring that, in our opinion, the judgment rendered was merely one of dismissal and was not intended to affect the merits of Morgan's claim. It decreed that his mortgage could not be acknowledged in the proceedings then pending, and dismissed his intervention.

Morgan's rights having been unaffected by the confiscation proceedings, and his act of mortgage containing the clause or pact "*de non alienando*," he was authorized to proceed in foreclosing his mortgage against Avegno, his mortgagor, in the same manner as though no divestiture of the latter's title and ownership had ever occurred.

This rule is elementary in our practice, and at this stage of our jurisprudence need not be supported by authority.

Avegno's title was either divested by the confiscation proceedings, or it was not.

If it was, then under plaintiffs' theory the life estate which had not

been sold was in the government, but subject to *bona fide* mortgages, and under the pact " *de non alienando*," subject, with the fee as vested in the presumptive heirs, to seizure by proceeding against the mortgagor.

If it was not divested, then his possession of the property from 1866, as shown by the record, was the possession of the owner, and he was legally dispossessed and expropriated by the marshal's seizure and by his sale in execution of Morgan's judgment.

We conclude that our learned brother of the District Bench has done justice to the parties.

Judgment affirmed.

Rehearing refused.

Bermudez, C. J., recuses himself, having been of counsel.