## AVEGNO & Others *v.* SCHMIDT & Others.

IN ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

Submitted January 12, 1885.—Decided January 26, 1885.

A decree confiscating real estate under the confiscation act of July 17, 1862, 12 Stat. 589, has no effect upon the interest of a mortgagee in the confiscated property.

A District Court of the United States in proceedings for confiscating real estate under the act of July 17, 1862, 12 Stat. 589, had no jurisdiction to pass upon the validity of a mortgage upon the estate proceeded against.

The well established rule in Louisiana that where a mortgage contains the *pact de non alienando,* the mortgagee may enforce his mortgage by proceedings against the mortgagor alone, notwithstanding the alienation of the property, applies to an alienation by condemnation in proceedings for confiscation, and as against the heirs at law of the person whose property is confiscated. *Shields* v. *Schiff,* 36 La. Ann. 645, approved.

The heirs at law of a person whose life interest in real estate was confiscated under the act of July 17, 1862, take, at his death, by descent, and not from the United States, under the act.

This was an action brought in the Civil District Court of the Parish of Orleans, in the State of Louisiana, by the plaintiffs in error, heirs of Bernard Avegno, deceased, two of whom, being minors, were represented by his widow, as their tutrix, against the defendants in error, to establish their title to certain real estate in the city of New Orleans, and to recover possession thereof. The case was tried by the court without a jury and judgment was rendered for the defendants. Upon appeal to the Supreme Court of the State, the judgment of the Civil

District Court was affirmed. To reverse that judgment of affirmance, the plaintiffs brought this writ of error. The pleadings and evidence disclosed the following facts:

On April 3, 1862, Bernard Avegno, being the owner of the property in dispute, executed a mortgage thereon to Israel C. Harris to secure promissory notes made by Avegno, payable to his own order and indorsed by him, amounting in the aggregate to $36,500, which he delivered to Harris. The mortgage contained the *pact de non alienando*, by which the mortgagor agreed not to sell, alienate, or encumber the mortgaged property to the prejudice of the mortgagee. The notes and mortgage were afterwards transferred by Harris to Charles Morgan. The mortgage being still in force on January 20, 1865, the United States filed, in the District Court for the District of Louisiana, a libel of information against the mortgaged property, of which Bernard Avegno was still the owner, to condemn it as confiscated, under the act of July 17, 1862, 12 Stat. 589, entitled "An Act to suppress insurrection, to punish treason and rebellion, and confiscate the property of rebels, and for other purposes," for the offences of its owner, Avegno. A writ of seizure was issued to the marshal, who, in his return, dated February 14, 1865, stated that he had seized and taken into his possession the property libelled.

Morgan, the mortgage creditor, intervened in the suit for confiscation, claiming to be paid out of the proceeds of the property the amount due on his mortgage. The District Court, on August 1, 1865, made a decree condemning the property in question as forfeited to the United States, and ordering it to be sold, and dismissing the intervention of Morgan, on the ground that his mortgage "could not be acknowledged." The decree of condemnation made by the District Court was not followed by a sale of the forfeited premises, nor were any proceedings taken under it.

Afterwards, on June 25, 1867, Morgan filed his bill in the Circuit Court for the District of Louisiana against Avegno, for the enforcement of his mortgage. On July 11 following, the court made a decree, under which, on December 21, 1868, the property was sold by the marshal and purchased by Morgan,

to whom, on December 26, the marshal made a deed therefor. On March 1, 1869, Morgan conveyed the premises to the defendants.

On August 12, 1872, Bernard Avegno died, leaving the plaintiffs, who are his children, as his heirs at law. They claim title to the property sued for under Bernard Avegno as his heirs. The averment of their petition is, " that, by reason of such confiscation and forfeiture, all right, title, interest and ownership of Bernard Avegno (deceased) was absolutely divested ; that said real estate was during his lifetime forfeited to the United States, but that the naked ownership thereof was then vested in your petitioners, who were his legitimate children, living at the time of the rendition of said decree and judgment of condemnation and forfeiture ; that, on the 12th day of August, 1872, Bernard Avegno died, whereupon the title and interest of the United States in the said property came to an end, and said life estate was terminated, your petitioners being therefore entitled to the full ownership thereof."

*Mr. Albert Voorhies* for plaintiffs in error.—The record shows a preliminary seizure before filing the libel for confiscation, and a subsequent seizure and actual possession by the marshal. This will be presumed to have continued till subsequent dispossession is shown. The judgment of confiscation vested the life estate in the United States, and the remainder in the presumptive heirs. *Semmes* v. *United States*, 91 U. S. 21. The title of the presumptive heirs does not spring from the sale, but from the forfeiture. See *Wallach* v. *Van Ryswick*, 92 U. S. 202 ; *Pike* v. *Wassell*, 94 U. S. 711 ; *French* v. *Wade*, 102 U. S. 132. Defendants are so impressed with the legal difficulties in the way of their title, resulting from want of proper parties in the foreclosure proceeding, that they fall back on the *pact de non alienando* contained in the mortgage act. There are in the Louisiana statutes, no textual provisions defining and regulating the *pact de non alienando.* Hence, when the Codes were adopted, it was at first objected that the pact itself was inconsistent with the provisions of both Codes—of 1808 and 1825. But the courts held otherwise, placing the matter upon

its true basis, to wit ; a contractual stipulation, which parties are at liberty to make to the extent that the stipulation does not conflict with, or militate against existing legislation. *Nathan* v. *Lee*, 2 Martin, N. S. 32 ; *Donaldson* v. *Maurin*, 1 La. 29 ; *Barrow* v. *Bank of Louisiana*, 2 La. Ann. 453 ; *Snow* v. *Trotter*, 3 La. Ann. 268 ; *Stanbrough* v. *McCall*, 4 La. Ann. 324. Individuals have no right to stipulate against forced sales of their property under judicial sanction ; nor can they shield their property against legal proceedings for its condemnation in cases of rebellion ;—nor can they bind government against any expropriation for public purposes. In other words, a debtor may bind himself by contract not to alienate his property ; but he cannot thereby estop or paralyze the action of courts of justice, or of the government. The defendants contend that the remedy of the mortgage creditor is by foreclosure against the confiscatee, or against him and the purchaser at the condemnation sale. There is no support for this position. *Day* v. *Micou*, 18 Wall. 156, cited in support of it, does not sustain it. Morgan was a party to the suit below, by intervention, and his claim was rejected, on the merits. The agreement with the District Attorney, subsequently filed, left the judgment of condemnation in full force, and without appeal. The record shows affirmatively that the court dismissed Morgan's intervention upon rejection of his demand, while it sanctioned the other claimants' demands as mortgage creditors. Defendants further contend that, before the appeal was finally disposed of, Avegno was pardoned, and that restored to him the property in question. There is a plain answer to this. The four lots had already been sold at the suit of *Morgan* v. *Avegno*, and had been purchased by the former for the amount of his mortgage notes, before the proclamation of amnesty. How then can defendants invoke the doctrine of *Knote* v. *United States*, 95 U. S. 149, 154 ?

*Mr. Henry C. Miller* for defendants Schmidt and Ziegler.

*Mr. Henry J. Leovy* for Morgan's estate.

MR. JUSTICE WOODS delivered the opinion of the court. He recited the facts as above stated, and continued :

It is plain, and is not disputed by the plaintiffs, that if there had been no proceeding instituted by the United States for the condemnation of the property, and no intervention therein by Morgan, he would have acquired a good title to the premises, by his purchase thereof at the sale made under the decree of the Circuit Court rendered upon his bill to enforce his mortgage, and his deed therefor to the defendants would have vested in them a good and indefeasible title.

The plaintiffs contend, however, that the title so conveyed is void, for two reasons, first, because the judgment of condemnation divested Avegno of all interest and estate in the forfeited premises, and the Circuit Court was, therefore, without jurisdiction to render a decree for the sale of the property in the suit brought to foreclose the mortgage to which Avegno was the only defendant ; and, second, because the District Court dismissed Morgan's intervention on the ground that his mortgage " could not be acknowledged," and because this was, in effect, the judgment of a court of competent jurisdiction in a proceeding to which Morgan was a party, declaring his mortgage to be void, and he and those claiming under him were bound by that judgment. We do not think that either of these grounds is well taken.

The interest of Morgan as a mortgagee was not divested or affected by the judgment of condemnation rendered by the District Court. *Day* v. *Micou,* 18 Wall. 156; *Claims of Marcuard,* 20 Wall. 114. Notwithstanding the judgment of condemnation, therefore, he had a valid subsisting mortgage superior to any estate in the mortgaged property acquired by the judgment of condemnation, or which could be acquired under a sale made by virtue thereof. A decree for the foreclosure of his mortgage and a sale under such a decree would carry to the purchaser the entire estate in the mortgaged premises, provided the necessary parties were made to the proceeding to foreclose. It does not lie with the plaintiffs to object that the United States were not made defendants to Morgan's suit. The estate of the government in the property having been de-

termined by the death of Avegno, it is now of no concern to
any one, so far as it respects the title to the property, whether
the government was represented in the suit of Morgan to
enforce his mortgage or not.   Without pointing out who were
the necessary and proper parties to such a suit, the plaintiffs
say that Avegno was neither a necessary nor a proper party,
and that as he was the sole defendant the Circuit Court was
without jurisdiction to make any decree in the suit brought by
Morgan to enforce his mortgage.

One answer of the defendants to this contention of the plain-
tiffs is, that the proceedings and decree of the District Court,
in the suit brought by the United States to enforce the forfeit-
ure of the mortgaged premises, were void because there was no
sufficient averment in the libel of a preliminary seizure, by au-
thority of the President, of the premises against which the
libel was filed, as required by the act of July 17, 1862, and that
consequently the title of Avegno was never divested, and he was
not only a necessary, but the only proper party to the suit of
Morgan to foreclose his mortgage.   We have not found it
necessary to pass upon this question.   Assuming that the de-
cree of condemnation made by the District Court was valid,
its effect was to vest in the United States an estate in the prop-
erty condemned, for the life of Avegno, and it left in Avegno
no estate or interest of any description which he could convey
by deed or devise by will; but the ownership after his death
was in nowise affected, except by placing it beyond his control
while living.   *Wallach* v. *Van Riswick*, 92 U. S. 202; *Pike* v.
*Wassell*, 94 U. S. 711, and *French* v. *Wade*, 102 U. S. 132.
The cases cited also declare that the joint resolution passed
contemporaneously with the act of July 17, 1862, 12 Stat. 627,
was intended for the benefit of the heirs of the person whose
property was condemned, to enable them to take the inherit-
ance after his death.   And in the case of *Pike* v. *Wassell, ubi
supra*, a bill filed during his lifetime by the children of the
person whose life estate had been condemned and sold, to pro-
tect the property from the encumbrance arising from the fail-
ure of the purchaser of the life estate to pay the current taxes
thereon, was sustained, the court declaring that, as there was

no. one else to look after the interests of the succession, the children might be properly permitted to do so.

These decisions, alone considered, apparently sustain the contention of the plaintiffs, that a decree in a suit to foreclose the mortgage, to which Avegno was the sole defendant, was without the necessary parties, and was, therefore, void for want of jurisdiction in the court to render it.

The answer of the defendants to this contention of the plaintiffs is, that, as the mortgage executed by Avegno contained the *pact de non alienando*, he was a proper and the only necessary party to the suit brought by Morgan to foreclose his mortgage.

The effect of the stipulation in a mortgage called the *pact de non alienando*, by which the mortgagor agrees not to alienate or encumber the mortgaged premises to the prejudice of the mortgage, is well settled in Louisiana. In *Nathan* v. *Lee*, 2 Martin, N. S. 32, the effect was decided to be, that "the mortgagee is not bound to pursue a third possessor, but may have the hypothecated property seized in *via executina* as if no change had taken place in its possessors, because any alienation or transfer made in violation of the *pact de non alienando* is *ipso jure* void as it relates to the creditor, and that this effect of the *pact* is not annulled by the provisions of the Civil Code in relation to mortgages, and the rules laid down for pursuing the action of mortgage."

In *Stambaugh* v. *McCall*, 4 La. Ann. 324, the court reviewed the cases on this subject, and held that where a mortgage contained the *pact de non alienando*, one who subsequently purchases the property from the mortgagor cannot claim to be in any better condition than his vendor, nor can he plead any exception which the latter could not, and that any alienation in violation of the *pact* is null as to the creditor.

These cases, and those cited in the note,* establish the rule

---

* *Donaldson* v. *Maurin*, 1 La. 29; *Moss* v. *Collier*, 14 La. 133; *Lawrence* v. *Burthe*. 15 La. 267; *Nicolet* v. *Moreau*, 13 La. 313; *Guesnard* v. *Soulie*, 8 La. Ann. 58; *Succession of Vancourt*, 11 La. Ann. 383; *Smith* v. *Nettle*, 13 La. Ann. 241; *Murphy* v. *Jandot*, 2 Rob. La. 378; *New Orleans Gas Light & Banking Co.* v. *Allen*, 4 Rob. La. 389; *Dodd* v. *Crain*, 6 Rob. La. 58.

that where a mortgage contains the *pact de non alienando* the mortgagee may enforce his mortgage by proceeding against the mortgagor alone, notwithstanding the alienation of the property, and that all those claiming under the mortgagor, whether directly or remotely, will be bound, although not made parties.

In the present case, and in the later case of *Shields* v. *Schiff*, 36 La. Ann. 645, the Supreme Court of Louisiana has held that there was such a privity between a person whose life estate had been condemned under the act of July 17, 1862, and his heirs, that the latter were bound by a suit and decree to enforce a mortgage executed by their ancestor containing the *pact de non alienando*, to which the ancestor alone had been made a party defendant.

We think this decision is right. It is sustained by the case of *Wallach* v. *Van Riswick, ubi supra*, as will appear by the following passages fom the opinion of the court in that case, delivered by Mr. Justice Strong:

" If it be contended that the heirs of Charles S. Wallach," the person whose property had been condemned, " cannot take by descent unless their father, at his death, was seized of an estate of inheritance, *e. g.*, reversion or a remainder, it may be answered, that even at common law it was not always necessary that the ancestor should be seized to enable the heir to take by descent. Shelley's case is, that where the ancestor *might* have taken and been seized the heir shall inherit. Fortescue, J., in *Thornby* v. *Fleetwood*, 1 Str. 318.

" If it were true that at common law the heirs could not take in any case where their ancestor was not seized at his death, the present case must be determined by the statute. Charles S. Wallach was seized of the entire fee of the land before its confiscation, and the act of Congress interposed to take from him that seizin for a limited time. That it was competent to do, attaching the limitation for the benefit of the heirs. It wrought no corruption of blood. In *Lord de la Warre's Case*, 11 Coke, 1 *a*, it was resolved by the justices ' that there was a difference betwixt disability personal and temporary, and a disability absolute and perpetual; as where one is attainted of treason or·

felony, that is an absolute and perpetual disability, by corruption of blood, for any of his posterity to claim any inheritance in fee simple, either as heir to him or to any ancestor above him; but when one is disabled by Parliament (without any attainder) to claim the dignity for his life, it is a personal disability for his life only, and his heir, after his death, may claim as heir to him or to any ancestor above him.' There is a close analogy between that case and the present."

"Without pursuing this discussion further, we repeat, that to hold that any estate or interest remained in Charles S. Wallach after the confiscation and sale of the land in controversy, would defeat the avowed purpose of the confiscation act and the only justification for its enactment; and to hold that the joint resolution was not intended for the benefit of his heirs exclusively, to enable them to take the inheritance after his death, would give preference to the guilty over the innocent. We cannot so hold."

These extracts show that it was the opinion of the court that the children of a person whose estate was condemned under the act of July 17, 1862, took, at his death, by descent as his heirs, the fee simple, and did not derive their title from the United States, or by virtue of the confiscation act.

Avegno, the mortgagor, was, therefore, the only person necessary to be made a party to the suit brought by Morgan to foreclose his mortgage, and the proceedings and sale were valid and binding on the plaintiffs, and vested in Morgan a good title to the premises in dispute, which he conveyed to the defendants.

But the plaintiffs insist that the mortgage had been declared inoperative and void by the District Court in dismissing the intervention of Morgan in the proceeding to condemn the mortgaged property, and that the defendants are bound by that judgment. There are two answers to this contention. The first is that this defence, if it be a defence, should have been pleaded in Morgan's suit brought to enforce his mortgage. The decree of a court of competent jurisdiction cannot be collaterally attacked by averring and proving that there was a good defence to the suit if the defendant had chosen to make

it.　The second answer is that the District Court was without jurisdiction to pass upon the validity of the mortgage in the suit for the condemnation of the mortgaged property.　*Bigelow* v. *Forrest,* 9 Wall. 339; *Day* v. *Micou,* 18 Wall. 146; *Claims of Marcuard,* 20 Wall. 114.　It does not clearly appear from the record that the District Court intended by its decree dismissing the intervention of Morgan to pass upon the validity of the mortgage; but if its decree is to be interpreted as declaring the mortgage to be invalid and void, the court exceeded its jurisdiction, and the decree was without effect upon the mortgage.

In our opinion, therefore, Morgan acquired a good title to the premises in controversy by his purchase at the sale made to satisfy his mortgage lien, and his deed to the defendants having vested them with his title, the judgment of the Supreme Court of Louisiana in their favor was right.

*Judgment affirmed.*