# SHIELDS *v.* SCHIFF.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

Argued November 9, 1887. — Decided January 23, 1888.

The confiscation act of July 17, 1862, 12 Stat. 589, c. 195, construed in connection with the joint resolution of the same day explanatory of it, 12 Stat. 627, makes no disposition of the confiscated property after the death of the owner, but leaves it to devolve to his heirs according to the *lex rei sitæ,* and those heirs take *qua* heirs, and not by donation from the government.

A mortgagee, in Louisiana, under an act containing the pact *de non alienando,* can proceed against the mortgagor after the latter's expropriation through confiscation proceedings, as though he had never been divested of his title.

The holder of a mortgage upon real estate in Louisiana ordered to be sold under a decree of confiscation may acquire the life interest of the mortgagor at the sale, and may possess and enjoy that title during the life-

time of the mortgagor without extinguishing either the debt or the security, by reason of confusion as provided by the code of that State.

The heirs of a person, whose property in Louisiana was sold under a decree of confiscation, succeed after his death by inheritance from him, and, being in privity with him, are bound equally with him by proceedings against him on a mortgage containing the pact *de non alienando.*

If a mortgage debtor in Louisiana, in a suit to foreclose a mortgage containing the pact *de non alienando,* waives the benefit of prescription, those who take from him are estopped from pressing it as effectually as he is estopped.

THE CASE, and the federal question, are stated in the opinion of the court.

*Mr. G. A. Breaux* for plaintiffs in error.

*Mr. John A. Campbell* for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

Catherine Shields, a sister of Eustace Surget, deceased, and the children of two other sisters of his, claiming to be his nearest relatives and only heirs at law, (he having left neither ascendants nor descendants,) filed a petition in the Civil District Court for the parish of Orleans against Arthur Schiff, in March, 1883, alleging that said Eustace, in 1860 and thereafter, owned certain property in New Orleans, consisting of certain lots of ground and buildings, particularly described, acquired by purchase from R. P. Hunt by act passed April 18th, 1860; that, by proceedings in the United States District Court said property was condemned and confiscated as property of said Surget, under the act of Congress of July 17th, 1862, and sold at marshal's sale on the 30th of May, 1865, to Arthur Schiff; that Surget died on the 1st of February, 1882; and that Schiff had continued in possession since that time, receiving the rents and revenues. The petitioners prayed to be declared owners of the property and entitled to the possession thereof since the death of Surget, and for a judgment against Schiff for the rent and damages.

Schiff, by his answer, claimed to be the owner and possessor of the property by lawful title acquired at public sale made by the civil sheriff of Orleans on the 3d day of August, 1880,

under and by virtue of a writ of seizure and sale for the fore-closure of a mortgage given upon said property on the 28th of January, 1860, by the former owner, R. P. Hunt, to one Edward Schiff, to secure $24,000, payable in notes which matured in January, 1862; which mortgage the said Eustace Surget, in his act of purchase from Hunt, assumed to pay as part of the price; and that the defendant, Arthur Schiff, was holder of the notes secured by said mortgage.

U. ier these pleadings the parties went to proof, and the statements of both petition and answer were verified. The act of mortgage given by Hunt to Schiff, January 28th, 1860; the act of sale by Hunt to Surget, April 18th, 1860; the confiscation proceedings and sale; the foreclosure proceedings and sale; and testimony of witnesses as to the family of Surget, were given in evidence. The mortgage from Hunt to Schiff contained the clause agreeing not to alienate, called the pact *de non alienandu.* The act of sale by Hunt to Surget contained a statement that the amount of the notes secured by the mortgage was part of the purchase price, and an assumption by Surget to pay the same, and a promise to fulfil and comply with all the conditions and clauses therein contained.

It appears that Arthur Schiff intervened in the confiscation proceedings for the protection of his mortgage upon the property, and at the sale became the purchaser for the sum of $22,000, the residue of which, after payment of costs and expenses, was duly credited on his notes. From the time of said sale (May 17th, 1865) Schiff had possession of the property.

There remained a large sum due to Schiff on the notes, amounting, on the 22d of June, 1880, to over $30,000. On that day, he instituted proceedings to foreclose his mortgage, by seizure and sale, making Eustace Surget, the debtor, party to the proceedings. Surget, being then in France, could not be personally served with the notice of demand of payment, and it was served upon a *curator ad hoc* appointed by the court; and a writ of seizure and sale was issued, and, on the 3d of July, 1880, the property was sold, and Schiff became the purchaser for the sum of $19,000. Monition proceedings were afterwards had, homologating the sale.

It appears by a certificate of the authorities of the city of Bordeaux, France, that Surget died in that place on the 1st of February, 1882. He left a will, dated July 11th, 1872, with a codicil thereto, dated November 12th, 1879. By the will he gave all his property to his wife, Mary Atwell Surget, (who survived him,) and made her his sole executrix; and the codicil was in these words, to wit:

"I hereby forcibly enjoin upon my dear wife, or, should she not be living at the time of my own demise, upon my natural heirs, to make immediately unto Arthur Schiff, of the city of New Orleans, Louisiana, a clear and valid title to certain property situated on Rampart Street, in that city, and conveyed to him by me by notarial act executed by me before T. O. Starke, notary public, in the city of New Orleans, on the 18th of July, 1866, the confiscation laws of the United States Government having deprived Mr. Schiff up to the present time of the full enjoyment and possession of said property, which is justly his, it having been my fixed and honest intention to make him a good and valid title to the said property."

It is understood that the property referred to is the same property now in question in this suit.

The Civil District Court of New Orleans, in accordance with the decisions of this court in *Bigelow* v. *Forrest,* 9 Wall. 339; *Day* v. *Micou,* 18 Wall. 156; *The Confiscation Cases,* 20 Wall. 92; and *Waples* v. *Hays,* 108 U. S. 6; and also in accordance with the decision of the Supreme Court of Louisiana in *Avegno* v. *Schmidt,* (which has since been affirmed by this court, 113 U. S. 293,) held that the confiscation of Surget's estate did not affect the mortgage which his grantor, Hunt, had given to Schiff, and that a sale of the property under that mortgage in 1880 was perfectly valid; and that it made no difference that Schiff, the purchaser of Surget's life estate under the confiscation proceedings, became also the purchaser under the mortgage.

It was objected by the plaintiffs against Schiff's title under the foreclosure proceedings, that the notes, to secure which the mortgage had been given, had been long prescribed, and that the mortgage had lapsed for want of re-inscription. But

the Civil District Court overruled this objection and said:
"Like the mortgage in the case of *Avegno* v. *Schmidt*, Schiff's
mortgage contained the pact *de non alienando.* As we have
seen above, the confiscation proceedings did not disturb the
contractual relations existing between Surget and Schiff. And
as long as the debt was not prescribed, or, if prescribed, and
the debtor did not plead it, the foreclosure was in time." The
court also held (though this was not necessary to the decision)
that Surget's instituted heir, and not his natural heirs, was
entitled to succeed to the estate upon his death. Judgment
was given in favor of the defendant. This judgment was
appealed to the Supreme Court of Louisiana, and was affirmed.
36 La. Ann. 645. The judgment of the Supreme Court is now
before us for revision; and substantially the same questions
are raised here which were made in the courts of Louisiana.

The opinions of the Justices of the Supreme Court of
Louisiana are presented to us in the record, and seem to us
satisfactorily to dispose of every question which is necessarily
involved. The leading opinion states the point to be decided,
and the propositions on which the decision should rest, as
follows:

"Under our views of the controversy, in the light of the
established jurisprudence on the true and correct meaning of
the confiscation act, the pivotal issue in the case hinges upon
the validity of the sale effected under the executory process
instituted against Surget by the defendant Schiff in June,
1880. A proper solution of that issue involves a consideration
of the question of the effect of the confiscation on the per-
petual ownership or fee of the confiscated property.

"In the recent case of *Avegno et al.* v. *Schmidt & Ziegler,*
35 La. Ann. 585, we had occasion to consider some of the
effects of proceedings instituted under that legislation.

"Under the guidance of numerous decisions of the Supreme
Court of the United States we established in that case the
following propositions, which are to some extent involved in
the present controversy, and which we shall therefore abstain
from discussing in this opinion:

"1st. The act of Congress of July 17, 1862, generally

known as the 'Confiscation Act,' and the joint resolution of the same day explanatory thereto, must be construed together.

" 2d. In a sale of property confiscated thereunder, all that could be sold was a right to the property seized, terminating with the life of the person for whose offence it had been seized.

" 3d. Such proceedings and sale do not affect the rights of mortgage existing in favor of third persons on the property, which goes to the Government or to the purchaser *cum onere.*

" 4th. A mortgagee under an act containing the pact *de non alienando,* can proceed against the mortgagor, after the latter's expropriation through confiscation proceedings, as though the latter had never been divested of his title. *Bigelow* v. *Forrest,* 9 Wall. 339; *Day* v. *Micou,* 18 Wall. 160; *Waples* v. *Hays,* 108 U. S. 6.

" Under the principles thus laid down, resting on the high authority of the first tribunal of the land, and which we do not understand to be contested by either party in the case at bar, we conclude that the following propositions can be considered as fully established in the present controversy :

" 1st. That the title which Schiff acquired at the confiscation sale in May, 1865, expired with Surget at his death, in 1882.

" 2d. That the mortgage rights of Schiff on the fee of the confiscated property for the security of the unpaid balance of his notes were not affected by that sale, but remained in full force notwithstanding his acquisition of a life estate in the property, and his possession and enjoyment of the same under his title, and that in this case there was no extinction of either the debt or the security by reason of confusion, as provided in our code." pp. 647, 648.

There seems to have been some difference of opinion between the judges on the question whether, after the confiscation proceedings and sale, the fee was in abeyance, or in the United States, or in Surget divested of the power of disposition; but all agreed that, however it was, the heirs succeeded by inheritance from Surget, and not by donation from the generosity of the Government; and, hence, being in privity with their ancestor, they were bound, equally with him, by the proceed-

ings on the mortgage, which contained the pact *de non* *alienando*.

Chief Justice Bermudez says:

" It is true that the proceeding is *in rem*, but the law of the *situs* requires it to be conducted contradictorily with the owner, in order that the judicial sale may operate a valid divestiture of the title or fee, even if the defendant were not the owner of the fee at the date of the proceeding and sale following.

" But even assuming and conceding that the offender, Surget, was actually divested of his entire ownership, perfect and imperfect, and that the fee vested in the United States, the divestiture would not be entitled to more effect than it would have if Surget had himself, in the absence of any condemnation and sale, voluntarily parted with his ownership of the property.

" In such a case, under the terms of the contract of sale on which Schiff bases his claim, the alienation of the property by Surget could not have prejudiced him, as it contains the clause *de non alienando*, which, under the laws of this State, authorizes him to proceed in the enforcement of his debt against the original debtor and mortgagor, regardless of the transfer and ignoring it — the property passing to the transferee or purchaser *cum onere*, or subject to that clause.

" From that standpoint it is therefore immaterial whether the fee remained in Surget or passed to the Government. It was divested by the proceedings of 1880 and vested in Schiff.

" Prescription is a means of defence created by the law for the necessity of things to which the individuals, in whose favor it exists, may have recourse or not as they may deem better. They are under no obligation to set it up. When, therefore, they are sued in a case in which they could urge it, and do not do so, they are deemed to have waived the benefit of it. Under such circumstances, those who take from them, their heirs or assigns, are as equally estopped from pressing it as effectually as the debtor himself.

" As Surget did not set up prescription or preëmption prior to the sale of the property, but, on the contrary, waived it,

and recognized title in Schiff, as is shown by his silence and his will, the claim of Schiff continued in existence, was legal and valid, and the expropriation became complete in his favor, as creditor, purchasing as if there never was any prescription law.

"Those and any other defences which could have been and were not set up by Surget before the sale, the plaintiffs, who are Surget's heirs and successors, and who have acquired no rights which he did not possess, and could not have exercised, cannot be permitted to assert and urge after his death." pp. 657, 658.

Mr. Justice Fenner says:

"For the purposes of this controversy, it matters not where the fee resided. Wherever it was, the Supreme Court has unequivocally settled the doctrine that it remained subject to prior mortgages and privileges in favor of third persons, which were entirely unaffected by the confiscation proceedings.

"Neither did those proceedings affect the debt due by Surget to Schiff, which was secured by mortgage.

"The object and effect of the pact *de non alienando* under our law is to secure to the mortgage creditor the right to foreclose his mortgage by executory process directed solely against the original debtor, and to seize and sell the mortgaged property, regardless of any subsequent alienations.

"We make a long step towards eliminating irrelevant questions and exposing the real and pivotal question in this case when we announce as an indisputable proposition, that if the executory proceedings against Surget were regular; if, at the date thereof, the debt subsisted; if the mortgage securing the same were valid, and had been preserved by proper inscription and re-inscription, the purchaser at the sale under these proceedings would have acquired a valid title against all the world, regardless of who owned the fee at the date thereof.

"Indeed, I do not understand that the learned counsel of plaintiffs would dispute this proposition. They claim that the title is invalid, as against plaintiffs, on two grounds, viz.:

"1. That at the date of the foreclosure proceeding, the debt of Schiff had been extinguished by prescription.

" 2. That his mortgage had lapsed as to them by the failure to re-inscribe it within the term prescribed by law.

" At this point we encounter other elementary propositions, too plain for dispute, establishing that, whatever force the above objections might have if urged by third persons, they have none in favor of the mortgagor or his heirs. As to prescription, the mortgagor having failed to plead it, its effect is forever lost as to him and his heirs. As to the want of re-inscription, neither inscription or re-inscription is necessary to preserve the mortgage as against the mortgagor and his heirs.

" By this process of elimination we reduce this controversy to a single question, viz.: Are the plaintiffs, heirs of Surget, claiming title by virtue of inheritance through him, or are they third persons as to him, deriving title from the bounty of the United States, conferred upon them under the merely descriptive quality of heirs of Surget? They have their right upon the latter hypothesis. If we confine ourselves to the plain language of the acts of Congress, it is difficult to discern any foundation for such a theory."

· The learned justice then proceeds to demonstrate from the words of the act of Congress of July 17, 1862, and the explanatory resolution, that they make no disposition of the property confiscated, after the death of the owner, but leave it to devolve to his heirs according to the *lex rei sitæ*, and that those heirs take *qua* heirs and not by donation from the government.

These opinions express precisely our own views with regard to the effect of the confiscation act upon the devolution of title at the death of the owner in whose hands the property was confiscated. Indeed, we expressed our concurrence in the judgment of the Supreme Court of Louisiana in this case in the opinion delivered by Mr. Justice Woods in *Avegno v. Schmidt*, 113 U. S. 293, 300. As this is the only federal question in the case, and as we concur in the opinion of the Supreme Court of Louisiana thereon, we accept the views of the state court as to the validity of the proceedings for foreclosure under the local laws of that State. In fact, nearly every point raised in the present case was decided in the case of *Avegno v. Schmidt*, above cited.

*Judgment affirmed.*